Fred and Ruth L. Zeller v. Commissioner.
Zeller v. Commissioner
Docket No. 15979.
United States Tax Court
1950 Tax Ct. Memo LEXIS 308; 9 T.C.M. (CCH) 7; T.C.M. (RIA) 50010; January 10, 1950
*308 Woodrow S. Wilson, Esq., and Milton S. Musser, Esq., for the petitioners. H. A. Melville, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves income tax for the calendar year 1945. Deficiency was determined in the amount of $477.28. The respondent asserts the 5 per cent negligence penalty under Section 293(a), Internal Revenue Code. The only issue presented is whether the Commissioner erred in disallowing deductions claimed, as follows: For contributions $433.20, interest $493.88, taxes $174.25, losses $110, medical expense $290.11, "miscellaneous expenses" $432. We make the following Findings of Fact The petitioners are husband and wife and residents of Long Beach, California, and filed their Federal income tax return for 1945 with the collector for the sixth district of California. During that year Fred Zeller, Jr., hereinafter referred to as petitioner, was a bread salesman, working for Weber Baking Company and selling at wholesale, upon a 10 per cent commission basis. He served 58 wholesale establishments. He reported gross income of $6,629.82. He was a member of the Christian *309 Church, attending about one-half of the Sundays. His wife attended regularly. The petitioner purchased a home in 1945, borrowing money in connection therewith and paying interest on such borrowed funds. He delivered bread in connection with driving to and from his home, out of regular hours, about twice a week. He could have used his employer's truck for that purpose but used his own car for his own convenience in order to save from 10 to 15 minutes on each trip twice a week. He was not required to purchase or wear a uniform or clothes bearing any company insignia. It was necessary, considering the nature of his business, that he wear special shoes and rain clothes. Other clothes worn at work were not of a type that could not be used generally. From all of the evidence adduced, we find that the petitioners made the following payments, during 1945: Interest
Jones Bros.
$155.09
Seaboard Finance Co.
242.27
Alfred Furniture Co.
20.00
Pacific Clothing
15.00
Total
$482.36
Contributions
To Christian Church
$ 75.00
Red Cross
15.00
Salvation Army
20.00
China Relief
2.00
U.S.O.
25.00
Tuberculosis Society
2.00
Disabled American Veterans
1.25
March of Dimes
3.00
American Legion
2.00
Rescue Mission
1.00
War Chest
5.00
Soldiers and Sailors Relief
2.00
Sister Kenney
5.00
Examiner War Wounded Fund
5.00
Total
$163.25
Taxes
County taxes
$ 51.55
City taxes
21.50
City personal
2.81
License
11.10
Sales tax
40.00
Total
$126.96
"Miscellaneous Expenses"
Special shoes
$ 11.95
Union dues
36.00
Unemployment insurance
30.00
Rain clothes
7.50
Use of automobile
20.00
Total
$105.45
Medical and Dental Expense
Dr. Mahannah
$153.00
St. Mary's Hospital
50.32
Dr. Kresmer
19.00
Dr. Van Dyke
42.00
Dr. Zeller
7.50
Dr. Gilkey
54.00
Drugs, vitamins, prescriptions
85.00
Total
$410.82
*310 A part of the deficiency was due to negligence of the petitioners in the preparation of their income tax return. Opinion It has been difficult to arrive at conclusions as to the proper deductions in this case. It was apparent that there was considerable "puffing" or overstatement of deductions desired by the petitioner. Thus, he stated that the contribution to the Red Cross was $35 or $40, that he so computed it, when in fact the return claimed only $25. Again he testified that $10 or more was donated to the March of Dimes, whereas the return lists $5. On the other hand, the return claims deduction of $36 for special shoes, whereas he testified that he bought only one pair for $11.95. On another item, donation to the Salvation Army, the return claims $120 and his testimony is that $20 was donated. Perhaps more important, however, and causing us more trouble in our evaluation of the value of the petitioner's testimony, is his testimony with reference to the necessity for uniforms in his work. In that connection a loss of $60 for "clothing destroyed at work" is claimed in the return, and it was the petitioner's very positive and repeated testimony that he was required to wear a *311 uniform (the $60 being "replacement of my uniform, the company uniform"), describing it as "with the name of the company on the cap and also on the flap of the jacket," that he was required by the company to wear it, that the coat had "Weber Bread" on the lapel and on the pocket of the shirt. However, the next day the respondent had present at the trial as a witness the general manager of the Weber Baking Company, and the petitioner then testified that he "wasn't actually required" to buy any clothes in connection with his employment except wearing apparel that would make him acceptable to the public, and that he did not believe that they had any insignia on them as identifying him as being an employee of the Weber Baking Company. He stated, however, that "We were bought uniforms approximately two years ago, which the company paid 50 per cent, I believe, * * *" and again he stated that it was in 1946 or 1947 "that we got uniforms that they paid 50 percent on * * *." The general manager for the company, however, testified as follows: "Q. What clothing or uniform, if any, was prescribed [in 1945] or required by your company of your route salesmen? "A. None. "Q. None whatsoever? *312 "A. No. "Q. Did the route salesmen wear shirts or jackets with 'Weber Baking Company' embossed on them in any way? "A. No." He also stated: "We had no established Weber sales uniform until Monday of this week." Also to affect the credibility of the witness respondent placed in evidence his income tax returns for 1946 and 1947 showing in the return for 1946 a claim of $25 loss because of an auto accident described as about April 22, 1946, involving a Van DeCamp truck which made a right turn and crowded him into the curb; whereas the return for 1947 also claimed a loss of $25 because of an accident wherein a "Van de Kamp bakery wagon made a right turn" forcing him to the curb. Petitioner thereupon testified that it was the "same particular accident" and that "it doesn't belong in there." These incidents have affected the credibility of this witness. We note too that he testified that he made only one attempt to get receipts from the various charitable organizations and that was from the Salvation Army. All of these matters, with contradictions and confusion in the testimony, have caused us not to give full credence to many of the claims. We have, nevertheless, applying Cohan v. Commissioner, 39 Fed. (2d) 540, *313 allowed deductions in the amounts and as to the items hereinabove described in our findings of fact as seemed fairly established under all of the circumstances. Those not enumerated above have been disallowed for failure of proof. In particular, the claim for $156 for "excessive transportation charges" which was described as delivery of bread out of work hours with the petitioner's own car was allowed to the extent of only $20. The record in the matter is confused and the item appears greatly exaggerated, for the evidence was, in substance, to the effect that petitioner used his own car, instead of the company truck he could have used to make deliveries, to save himself about 10 or 15 minutes, about twice a week, in connection with delivering bread, largely at least, on the way to and from his home, though apparently deviating from a direct route. The respondent pleaded the addition of the 5 per cent negligence penalty under Section 293(a), Internal Revenue Code. We approve such addition, for it is apparent from the entire record that in the preparation of his income tax returns petitioners were negligent in making claims without regard to the facts substantiated *314 and that some part of the deficiency was due to their negligence in that respect. Decision will be entered under Rule 50.